UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TACARA ANDERSON, on behalf of
minor child, MA,

    Plaintiff,

v.                                                    CASE NO: 8:18-CV-1646-T-30SPF

OFFICER JONATHAN VAZQUEZ,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant Police Officer Jonathan Vazquez's Dispositive Motion for Summary Judgment (Dkt. 40) and Plaintiff's Response in Opposition (Dkt. 48). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted. Specifically, Defendant is entitled to qualified immunity on Plaintiff's excessive force claim.

## PROCEDURAL HISTORY

Plaintiff Tacara Anderson filed a section 1983 excessive force claim against Defendant Officer Jonathan Vazquez on behalf of her minor son, Michael Atwater. The amended complaint alleged that Atwater, who was twelve years old, 60 inches tall, and weighed 80 pounds at the relevant time, suffered severe injuries to his right leg as a result of excessive force on the part of Officer Vazquez when he released a K-9 on Atwater.

According to the amended complaint, officers from the St. Petersburg Police Department were pursuing Atwater and his friends after the officers saw them looking into vehicles. One of the boys took something out of a Ford pick-up truck. The boys ran from the officers and Officer Vazquez released the K-9. The K-9 "took [Atwater] down," Officer Vazquez said, "Get him! Good boy," watched the K-9 repeatedly bite Atwater, and Atwater was so scared that he lost control of his bladder. The amended complaint alleged in detail the severe extent of Atwater's damages. It also alleged several facts that, if true, provided a strong inference that Officer Vazquez knew Atwater was a minor before he released the K-9. (Dkt. 3).

Officer Vazquez filed a dispositive motion to dismiss the amended complaint, arguing he was entitled to qualified immunity. The Court denied the motion because the Court concluded that the allegations that Officer Vazquez knew Atwater was a minor and permitted the K-9 to continue to bite Atwater beyond what was reasonably necessary precluded a finding of qualified immunity at the motion to dismiss stage. The Court noted that Officer Vazquez could renew his argument at the summary judgment stage. (Dkt. 12).

The parties conducted discovery and now Officer Vazquez has filed the instant motion for summary judgment. He argues that the undisputed record evidence makes clear that he is entitled to qualified immunity. The Court agrees. The record, which the Court now summarizes, paints a portrait different from the complaint.

## **BACKGROUND**

This case began in St. Petersburg, Florida, on Monday, July 22, 2014, shortly after midnight. At that time, undercover detectives with the St. Petersburg Police Department were conducting surveillance in an apartment complex that recently experienced a rash of auto burglaries. The detectives began surveilling three individuals walking in and around the apartment complex. The three individuals were later identified as Atwater, Harry Kato, and Marquil Evans.

The record reflects that Atwater appeared to be acting as a "look out" while Kato and Evans tried opening cars. At one point, the detectives observed Kato and Evans enter an unlocked Ford Truck and remove an unknown item. Atwater assisted with concealing the item in a backpack Kato was wearing.

Units were called in to form a perimeter in order to apprehend the suspects. The transcript of the police radio communications during this time describes the action of the three individuals in real time as they are being surveilled by the officers. Notably, the transcript does not identify which officer is speaking—it just references "officer." Early in the transcript, one of the officers states that the individuals are not "looking at anything" and "may just be walking home to those apartments." (Dkt. 40-5 at 3:10-12). Then an officer observes that the individuals stopped walking and are "standing in the alley." *Id.* at 15-16.

The officers continue to observe the individuals' actions and discuss the individuals' locations. Throughout the transcript, the individuals are described as: "tall one," "fairly tall, has got a hat on backwards, light-colored shirt," "small one," wearing a backpack, "little

one," "smaller guy," and "little guy." An officer is heard saying that "[t]hey're in the white van, guys. Tall one is in the white van. K-9 monitoring?" *Id.* at 11:18-19. The officers continue to discuss the three individuals' actions. At one point an officer says: "Running south, running south, running south." And another officer states: "I got the dog out. Don't move. Don't move." *Id.* at 12:19-22. Around this same time, Officer Vazquez's K-9, Ares, apprehends Atwater.

Atwater was twelve years old, weighed 75 pounds, and was 4 feet, 10 inches at the time of the incident. Atwater asserts that Officer Vazquez's use of Ares to apprehend him was excessive in light of Atwater's status as a juvenile, and in light of his incredibly small stature.

The record reflects the following undisputed facts with respect to the circumstances surrounding Officer Vazquez's decision to release Ares. Officer Vazquez had been employed with the St. Petersburg Police Department since 2007; he started with the K-9 unit in 2013. He testified that on the night of July 22, 2014, he was working with his dog Ares when undercover detectives observed three individuals commit an auto burglary. Officer Vazquez testified that it was very dark outside and several vehicles were between him and the three individuals. At no time were the three individuals referred to as "children," "juveniles," or "minors."

The three individuals started to run after Officer Vazquez yelled, "St. Petersburg Police K-9. Get on the ground or I'll release my dog." Officer Vazquez testified that he could see three figures running, but not that they were juveniles. The size of the individuals

was not something he could determine due to the darkness. From his understanding of the radio communications they were described as "three guys, a taller one and smaller ones." (Dkt. 41 at 57:19-23). Specifically, he stated: "Size was not something I was able to gather in the seconds that it took for them to run. It was, I could see three individuals running from where I challenged them. I couldn't tell you how tall the tallest one was, and I couldn't tell you how short the shortest one was." *Id.* at 58:1-6. He testified there was a concern that one of the individuals could have a weapon because one suspect wore a backpack.

Officer Vazquez chased the suspects with Ares on the leash until he was confident that Ares was able to see the suspects and was targeted on them. Ares lifted his head, looked in the direction of the suspects, and Officer Vazquez released him. Officer Vazquez testified that he did not see the size of the captured suspect (Atwater) until Ares made the apprehension. He testified that the entire situation was fluid: "As the dog is running, [the three suspects] are running as well." *Id.* at 67:18-23. As soon as Officer Vazquez saw Atwater's size, he gave the release command for Ares to release Atwater and Ares released Atwater. Officer Vazquez then immediately called for medical rescue and Atwater was transported to All Children's Hospital.

With respect to Atwater's size, Vazquez repeatedly testified that he had no idea Atwater was only 4 feet, 10 inches and 75 pounds until he saw him:

> Now, obviously, once I got to him, I saw he was 4'10'', 75-pound guy, so yes. But was that the description I was able to obtain while he was running? No. There was no height and weight being able to be calculated while three guys are running behind vehicles, blocking my view. And the only thing I could see, again, was the motion of all three running from the location of where I was led to that they were. Again, they were just running.

*Id.* at 95:17-25. He stated that it never crossed his mind that a 12-year-old would be out, after midnight, committing a vehicle burglary, and then running from the police.

Atwater testified that he started running when he saw a person with pitch black clothes on; at the time he "thought it was the dude like who car we was in, the person car." (Dkt. 40-3 at 54:9-10). It was difficult for him to tell if it was a police officer because it was dark outside and the street he was located on was dark. He then saw people in black walking but he could not identify if they were police officers because it was too dark. Atwater stated that after he started running he "just fell down when the dog bit the back of [his] leg." *Id.* at 44: 5-6. The "entirety of the incident" lasted "30 or 40 seconds." *Id.* at 8-10. Atwater confirmed that Officer Vazquez acted quickly to get Ares off of him. Atwater admitted that he ran from the police. He also admitted that a DVD (or tape) was taken out of the truck.

Atwater's injuries from the dog bite were significant. He spent seventeen days in the hospital. He has scars on his leg and he is still traumatized, emotionally, from the incident.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

# DISCUSSION

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). Here, it is undisputed that Officer Vazquez was acting within the scope of his discretionary authority.

To avoid summary judgment based on qualified immunity, a plaintiff must show both that the defendant violated a federal right and that the right was already clearly established in light of the circumstances that occurred when defendant acted. *Id.* A federal right is "clearly established" when "'[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015); *see also White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (noting that "[i]n the last five

years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases" and emphasizing that "clearly established law" should not be defined "at a high level of generality."); *Gates v. Khokhar*, 884 F.3d 1290, 1302-03 (11th Cir. 2018) (discussing same). "The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a 1983 defendant of his qualified immunity." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000).

The Court concludes that Officer Vazquez did not violate a federal right as a matter of law. The Court also concludes that, even if Officer Vazquez violated a federal right, the law was not clearly established in light of the circumstances that occurred at the time of the incident.

No Violation of a Federal Right

The Eleventh Circuit evaluates excessive force claims under the Fourth Amendment's "objective reasonableness" standard. *Jones v. Fransen*, 857 F.3d 843, 852–55 (11th Cir. 2017) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam)). This standard requires a court to inquire "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Crenshaw*, 556 F.3d at 1290 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)) (internal quotation marks omitted). Importantly, this analysis is done "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (internal quotation marks omitted). A court must also keep in mind that

"the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citation omitted).

The standard requires a court to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Crenshaw*, 556 F.3d at 1290 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted). The factors to consider include "(1) the severity of the crime; (2) whether the individual poses an immediate threat to the safety of the officers or others; (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; (6) the severity of the injury; and (7) whether officers applied force in good faith or [rather did so] maliciously and sadistically." *Jones*, 857 at 852–53 (quoting *Graham*, 490 U.S. at 396 and *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)) (internal citations and quotations omitted).

After weighing the *Graham* factors, the Court concludes that Officer Vazquez's use of force was objectively reasonable in light of the facts confronting him. Officer Vazquez and the detectives present at the time of the incident were investigating a vehicle burglary, which is a felony. The three suspects were observed running off in the dark—one of the suspects was wearing a backpack, which could have contained a weapon. It is undisputed that the suspects attempted to evade by flight.

The record reflects that the detectives requested K-9 assistance and Officer Vazquez released Ares in order to apprehend the fleeing suspects. The record is undisputed that

Officer Vazquez was not acting maliciously or sadistically. As soon as he saw that Atwater was a small juvenile he released Ares and called for medical intervention. Atwater's injuries were severe because he was a small juvenile. Although what happened to Atwater was undoubtedly tragic because he was a small juvenile at the time, there is nothing in the record establishing that Officer Vazquez knew Atwater was a small juvenile. And, contrary to the amended complaint's allegations, Officer Vazquez immediately released Ares—he did not permit Ares to continue to bite Atwater. Atwater testified that the "entirety of the incident" lasted "30 or 40 seconds."

Atwater's only real opposition in this case (having abandoned the allegation that Officer Vazquez permitted Ares to continue to bite him) is that the facts, accepted in a light most favorable to Atwater, suggest that Officer Vazquez knew or should have known that Atwater was a small child. Assuming this fact in Atwater's favor, Atwater then argues that a jury should decide whether the force employed was excessive. The problem with Atwater's argument is that the record is undisputed that Officer Vazquez could not observe Atwater's size or age because it was too dark. Officer Vazquez repeatedly testified that he could not tell the height and size of the three suspects who were running away from him in the dark and on a dark street. Atwater also testified that it was dark. Indeed, it was so dark that Atwater could not tell that the officers were chasing him.

The use of the words "little," "small," and "tall" on the radio communications is insufficient to place Officer Vazquez on notice of whether the suspects were small juveniles. Yet, Atwater would like the Court to speculate that Officer Vazquez should have known Atwater was under five feet and only 75 pounds because of after-the-fact evidence, i.e.,

Atwater was a small child when Ares apprehended him and Officer Vazquez should have known that. This is hindsight evidence, which is insufficient to create a genuine issue of fact for trial.

Atwater's description of the record evidence is also misleading. For example, he argues that Officer Vazquez saw "all three boys look in his direction, and then take off." At no time did Officer Vazquez testify that he saw a "boy." Atwater also insinuates that the serious problem of juvenile auto burglaries in the South St. Petersburg area should have placed Officer Vazquez on notice that Atwater was "small and potentially a small child." Again, this is pure speculation. The record is clear that Officer Vazquez was informed of a vehicle burglary. There was no reference to juveniles. And Officer Vazquez testified that he did not consider whether the suspects were juveniles because it was after midnight on a Monday night.

For these same reasons, Atwater's expert, Dr. Charlie Mesloh, does not create a material dispute because, like Atwater, Dr. Mesloh assumes that Officer Vazquez knew or should have known that Atwater was a juvenile. Relying on this premise, Dr. Mesloh then concludes that the release of Ares was unreasonable. Notably, putting aside the fact that there is insufficient evidence establishing that Officer Vazquez knew Atwater was a juvenile, an expert's testimony on a party's knowledge or state of mind is pure speculation. So Dr. Mesloh's opinion, which is based on a speculative premise, is insufficient to create a jury question.

Moreover, the Supreme Court is reluctant to rely on expert testimony to create a genuine issue for trial on the matter of qualified immunity. *See City & Cty. of San*

*Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777-78 (2015) (noting, in the context of an excessive force case, that "so long as a reasonable officer could have believed that his conduct was justified, a plaintiff cannot avoi[d] summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.") (internal quotations and citations omitted).

In sum, without the benefit of hindsight, the evidence reflects that Officer Vazquez acted objectively reasonable. He made a split second decision based upon the facts he was faced with: a request for K-9 assistance after three suspects participated in a vehicle burglary and fled from the police—this occurred on a Monday, after midnight, on a dark street. Accordingly, Officer Vazquez is entitled to summary judgment.

No Clearly Established Law

Even if the Court were to conclude that Officer Vazquez violated Atwater's constitutional rights, Atwater fails to meet his burden to establish that the law was clearly established at the time of the incident. Atwater's citation to general rules and abstract rights is insufficient. Notably, the Eleventh Circuit has offered some guidance in dog bite cases. In *Jones*, the Eleventh Circuit aptly summarized two prior Eleventh Circuit opinions involving police dog bites and whether the force was excessive. *See* 857 F.3d at 853 ("*Priester* and *Crenshaw* fall near opposite ends of our dog-bite excessive-force spectrum. They show how we have applied the *Graham* and *Hadley* factors to determine whether a Fourth Amendment violation occurred in the context of police-dog-bite cases.").

The Eleventh Circuit first summarized *Priester* and *Crenshaw*:

> In *Priester*, the crime at issue was one of the more minor ones; Priester was suspected of having stolen roughly $20's worth of snacks from a golf shop. Nor did anything suggest that Priester was armed or that he otherwise posed an immediate threat to the officers or anyone else. And though Priester originally fled the officers, once they discovered him, he immediately submitted to them. Yet the officer who controlled the police dog nonetheless ordered his dog to attack and bite Priester for at least two minutes and threatened to kill Priester when Priester tried to resist the attack. As a result of the attack, Priester suffered fourteen puncture wounds to his legs. We easily concluded that the officer and his officer colleague who failed to intervene violated Priester's Fourth Amendment right to be free from the use of excessive force.
>
> In *Crenshaw*, on the other hand, we found that the canine-controlling officer and his colleague who did not intervene did not violate Crenshaw's Fourth Amendment right to be free from the use of excessive force, when the officer unleashed his police dog on Crenshaw. Considering the various evaluative factors, we noted that the crime at issue was far more serious than that involved in *Priester*; Crenshaw was believed to have committed at least one, and possibly two, armed robberies. Crenshaw also violently fled police, crashing his car into a marked police vehicle before running into very dense woods and hiding in brush. As a result, officers reasonably thought Crenshaw posed an immediate threat to at least themselves. And because it was dark and officers had lost track of Crenshaw before Crenshaw yelled out, "I am over here," we found it reasonable for the officers to be concerned about a possible ambush and to continue to consider themselves at immediate risk from Crenshaw when they released the dog. The attack resulted in multiple puncture wounds to Crenshaw's legs, including one that required six stitches to close.

*Jones*, 857 F.3d at 853-54 (internal citations omitted).

After discussing the facts presented in *Priester* and *Crenshaw*, the Eleventh Circuit then concluded that the facts presented in *Jones* landed "somewhere between" the facts involved in *Priester* and *Crenshaw*. Specifically,

> Jones purportedly stole a television from his former girlfriend's residence. And while domestic-related crimes certainly have the potential to be extremely serious and dangerous, nothing about this particular incident indicated that it fell into that category. At the time Jones's ex-girlfriend reported the theft,

-14-

Jones was already out of the apartment, and his ex-girlfriend gave no indication that he had been violent or armed. On the other hand, when Jones fled police, unlike *Priester*, he did not ultimately overtly surrender himself. Instead, he led police into physically challenging terrain with brush and boulders, similar to the place where Crenshaw fled, and he did not respond in any way to Fransen's K–9 warnings. Like the Crenshaw officers, a reasonable officer in one of Defendants' places could have been concerned, at the time Draco was released, about entering the heavy brush to apprehend Jones and being met by a potential ambush. So Jones's case is not directly on all fours with either *Priester* or *Crenshaw*. As a result, neither case alone could have provided Defendant Officers with the type of "fair notice" necessary to breach qualified immunity. And considering the cases together helps no more since *Priester* and *Crenshaw* reached opposite conclusions concerning whether an excessive-force violation occurred.

857 F.3d at 854-55.

Here, the Court concludes (similar to *Jones*) that the facts presented are not directly "on all fours" with *Priester* or *Crenshaw*. As a result, these cases were insufficient to provide Officer Vazquez with the type of notice required to breach qualified immunity. The Court also concludes that Officer Vazquez's actions in this case do not "lie[ ] so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Jones,* 857 F.3d at 855 (citations and internal quotation marks omitted).[1] Accordingly, Officer Vazquez is entitled to summary judgment because the law in this area was not "clearly established."

---

[1] Atwater's argument that a "broader, clearly established principle" controls the facts of this case is unpersuasive in light of the Eleventh Circuit precedent on dog bite cases discussed herein.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Police Officer Jonathan Vazquez's Dispositive Motion for Summary Judgment (Dkt. 40) is granted for the reasons stated herein.

2. The parties' Motions related to the exclusion of expert testimony (Dkts. 45, 50) are denied as moot.

3. The Clerk of Court is directed to enter Final Judgment in favor of Defendant and against Plaintiff.

4. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on September 30, 2019.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record