[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14386
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cv-01646-JSM-SPF

TACARA ANDERSON,
on behalf of minor child MA,

                        Plaintiff - Appellant,

versus

JONATHAN VAZQUEZ,
Officer,

                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 6, 2020)

Before GRANT, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Tacara Anderson, on behalf of her minor son M.A., appeals the district court's order granting summary judgment in favor of Defendant Officer Jonathan Vasquez in Plaintiff's civil action, filed pursuant to 42 U.S.C. § 1983. Plaintiff contends that a policeman's use of a K-9 to stop M.A. constituted excessive force in violation of the Fourth Amendment. No reversible error has been shown; we affirm.

This appeal arises out of events that occurred on the night of 22 July 2014. Viewed in the light most favorable to Plaintiff, these facts are pertinent. Undercover detectives with the St. Petersburg Police Department were conducting surveillance near an apartment complex that had experienced recently a series of auto burglaries.[1] The detectives communicated with each other over the police radio and described their observations at the actual time the events occurred. At some point, Officer Vasquez -- who was not involved in the surveillance activities -- began listening to the detectives' radio communications.

After midnight, the detectives observed three persons walking in and around vehicles parked at the apartment complex. A transcript of the radio transmission shows that the detectives described one of the three people as being "fairly tall" or

---

[1] In Florida, auto burglary is a felony offense. See Fla. Stat. § 810.02.

the "tall one" and referred to the other two people as "the small ones," "the little ones," or the "smaller guys." Words like boys or juveniles or children were not used. As the detectives watched, they observed two of the persons enter a vehicle and take something out. The third person -- later identified as M.A. -- then assisted the others in concealing the stolen item in a backpack. At that point, the detectives requested back-up from a K-9 officer; Officer Vasquez, hearing the request, responded to the call.

Officer Vasquez arrived at the location specified by the detectives and got his K-9 partner, Ares, out of the car. Officer Vasquez then saw three figures walking along the street about forty to fifty feet away. Officer Vasquez announced, "Police. K-9. Get on the ground or I will release my dog." The three suspects looked in Officer Vasquez's direction and then immediately took off running. It was dark out. Officer Vasquez swears he was unable to see facial features or determine the age or size of the suspects -- he saw only that the figures were attempting to flee. Officer Vasquez ran after the three suspects with Ares on a leash. Officer Vasquez then shouted a second warning; the three suspects ignored the warning and continued running. At that point, Officer Vasquez released Ares.

Officer Vasquez turned a corner and saw that Ares had caught one of the suspects (M.A.). Immediately, Officer Vasquez gave the command for the dog to

3

let go; and Ares did.  Officer Vasquez says it was not until M.A. was caught that Officer Vasquez saw M.A.'s size.  At the time of the incident, M.A. was 12 years' old, 4 feet 10 inches tall, and weighed 75 pounds.[2]  Officer Vasquez called immediately for medical assistance, and M.A. was carried to the hospital.  M.A. suffered significant injuries to the back of his right leg as a result of the dog bite.

According to M.A., the entire incident -- from when Officer Vasquez first called out and M.A. started running to when M.A. was bitten -- lasted about thirty to forty seconds.  Officer Vasquez then acted "quickly" in commanding the dog to let go.  About the reason M.A. ran from Officer Vasquez, M.A. explained that -- given how dark it was -- M.A. did not know that Officer Vasquez (who was in uniform) was a police officer and thought, instead, that he was the owner of the car that had just been burglarized.  M.A. said no objects stood between M.A. and Officer Vasquez that would have obstructed Officer Vasquez's view of M.A. during the ensuing chase.

Plaintiff filed this civil action against Officer Vasquez, in his individual capacity, asserting a claim for excessive force in violation of the Fourth Amendment.  The district court granted Officer Vasquez's motion for summary judgment: a motion asserting qualified immunity.  The district court concluded that

---

[2] These measurements are not the only ones to the point in the record for M.A.  Plaintiff's complaints said M.A. was somewhat bigger: standing 5 feet tall and weighing 80 pounds.  We have used the smaller numbers for our decision-making.

Plaintiff had demonstrated no constitutional violation and no violation of a constitutional right that was already clearly established.

We review de novo a district court's grant of summary judgment, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To avoid summary judgment based on qualified immunity, Plaintiff carries the burden and must show both that Officer Vasquez violated a federal right and that the right was already clearly established when Officer Vasquez acted. See id. The doctrine of qualified immunity, when applied properly, "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).

A federal right is "clearly established" when "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful." D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quotations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond

5

debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (emphasis added); see Wesby, 138 S. Ct. at 589.  In determining whether the law is clearly established, courts must consider "whether the violative nature of particular conduct is clearly established . . . in the light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S. Ct. at 308 (emphasis in original).

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotations omitted).  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).  An officer's use of force is unconstitutionally excessive only if the force used was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. Id. at 397 (quotations omitted).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).  The merits of excessive force claims are fact sensitive.  We must consider all of the

6

circumstances; among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. "We are loath to second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

The evidence, viewed in the light most favorable to Plaintiff, shows that Officer Vasquez acted objectively reasonably under the circumstances when he released Ares. Officer Vasquez knew that detectives had observed three suspects committing vehicular burglary: a felony offense. See Fla. Stat. § 810.02. He and his dog had been called to the scene as back-up by other police officers who had been watching the suspects. After Officer Vasquez saw the suspects and announced himself, the three suspects attempted immediately to evade arrest by

7

flight; they refused two orders to stop and get on the ground.  It was very dark and was late -- after midnight.

Given the felony suspects' noncompliant behavior, that the suspects carried a backpack that could have concealed a weapon (at the time, the police did not know what had been taken from the vehicle), and that the suspects fled at night through a populated area where an extended flight might well be successful, an objective officer in Officer Vasquez's position could have believed reasonably that these fleeing felony suspects posed a danger to others.  Faced with a "tense, uncertain, and rapidly evolving" situation, Officer Vasquez made a split-second decision to use his K-9 to gain control of the situation and to lessen the risk of danger.  Under these circumstances, we cannot say that Officer Vasquez's decision to use his dog was constitutionally unreasonable.

On appeal, Plaintiff contends that Officer Vasquez knew or should have known that M.A. was a child or a small person; and Plaintiff then argues that the use of force employed must therefore be unreasonable.  We accept M.A.'s testimony that no vehicles or objects stood between him and Officer Vasquez.  Still, nothing adequately contradicts Officer Vasquez's testimony that -- given the darkness, that the suspects were running, and the speed with which the events unfolded -- he was unable to see the suspects' facial features or to determine the individual size of each of the suspects.  Officer Vasquez could determine only that

three suspects (one of whom was taller than the other two) were running in a group in an attempt to evade arrest.  Moreover, at no time during the pertinent radio transmissions did the detectives -- who had been surveilling the suspects for several minutes and who called for the K-9 back-up -- indicate that the suspects were juveniles.  The detectives, instead, described the suspects as being "tall," "small," or "little" -- as one suspect related to another.  Those adjectives alone would not have put a reasonable officer on notice that the suspects might have been juveniles or child-like in size.  (In passing, Officer Vasquez -- who is 5 feet 6 inches in height and who weighs 150 pounds -- testified in deposition that he frequently gets called "small" or "little" himself).

On this record, nothing evidences that a reasonable officer in Officer Vasquez's position must have known that M.A. was a juvenile or that Officer Vasquez's use of the K-9 constituted a violation of the Fourth Amendment.

By the time of this incident in 2014, this Court had some precedent about the constitutionality of using a K-9 to apprehend a suspect.  In <u>Preister v. City of Riviera Beach</u>, we concluded (without similar precedent) that an officer was unentitled to qualified immunity from a claim for excessive force when the officer had ordered his dog to attack a burglary suspect -- and allowed the dog to bite repeatedly the suspect for at least two minutes -- <u>after</u> the suspect had submitted immediately to the officers and complied with the officers' orders to get on the

9

ground.  208 F.3d 919, 927 (11th Cir. 2000).  In Crenshaw v. Lister, we concluded that an officer acted objectively reasonably when he used a K-9 to apprehend an armed robbery suspect who had fled violently from police, crashing his car into a marked police car and then ran into dense woods at night.  556 F.3d 1283, 1291-92 (11th Cir. 2009).  Then, in Edwards v. Stanley, we determined that the initial use of a K-9 to track and to subdue a fleeing suspect who had committed "a non-serious traffic offense" was constitutionally reasonable, but that permitting the K-9 to then attack the suspect for five to seven minutes constituted excessive force.  666 F.3d 1289, 1295-96 (11th Cir. 2012).[3]

While these cases provide some guidance about the unlawful use of K-9 force, the circumstances presented in this appeal are far different from the circumstances involved in Priester, Crenshaw, and in Edwards.  Most important -- unlike the circumstances in Priester and in Edwards that led to the conclusion that the officer's use of force was unconstitutionally excessive, nothing in this record evidences that Officer Vasquez permitted Ares to attack M.A. for an unduly prolonged period.  To the contrary, the entire incident here lasted only thirty to forty seconds; and Officer Vasquez immediately issued the command for Ares to let go as soon as Officer Vasquez saw that M.A. had been caught.

---

[3]  The opinions in these three cases say nothing about the arrested person's age or physical size.

Plaintiff correctly concedes that no binding precedent existed in 2014 that involved circumstances factually similar to the pertinent circumstances presented in this case. Plaintiff contends, instead, that Officer Vasquez's conduct -- given the state of the law generally -- constituted an "obvious" Fourth Amendment violation. We reject this argument.

The Supreme Court has stressed repeatedly that the "clearly established" standard requires a "high degree of specificity." See Wesby, 138 S. Ct. at 590 (quotations omitted); Mullenix, 136 S. Ct. at 309; see also Gates v. Khokar, 884 F.3d 1290, 1302-03 (11th Cir. 2018) (collecting cases). Specificity is particularly important in Fourth Amendment cases, where -- given the many variables confronting an officer on the scene that must be considered -- it is often difficult for officers to predict on the spot how the pertinent legal doctrine (here, excessive force) will apply in the precise factual situation arising before them. See Wesby, 138 S. Ct. at 590; Mullenix, 136 S. Ct. at 308.

We have recognized a rare "narrow exception" to the general rule requiring particularized case law to establish clearly the law: the obvious violation. Still, facts and context dictate case outcomes: not general legal propositions. This "narrow exception" applies in circumstances where an "official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding

11

the lack of caselaw." See Priester, 208 F.3d at 926. For an official to lose protection under qualified immunity, in some way the "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances . . .." Id. at 927. The law beforehand must give genuine notice.

Nothing about the pre-existing law tied to the Fourth Amendment's prohibitions, especially with the use of K-9s to apprehend suspects, came close to compelling the definite conclusion for every reasonable police officer that Officer Vasquez's use of force was constitutionally unreasonable under the circumstances presented to him in this case. Tiny differences in the facts of cases, for example, matters of lighting, of time and place, can justify entirely different outcomes for the question of whether police conduct was consistent or inconsistent with the federal law. IF this case presents a constitutional violation at all (and we say "no"), this case presents no constitutional violation that was obvious when the officer acted.

Officer Vasquez was entitled to qualified immunity from Plaintiff's claim for excessive force. Accordingly, we affirm both the district court's grant of summary judgment in favor of Officer Vasquez and the district court's denial of

Plaintiff's motion to alter or amend the final judgment.

    AFFIRMED.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 06, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 19-14386-HH
Case Style: Tacara Anderson v. Jonathan Vazquez
District Court Docket No: 8:18-cv-01646-JSM-SPF

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion